Good morning. May it please the Court. I would like to reserve four minutes of my time for rebuttal. You should keep your own time, and I'll try to remind you. Thank you. I will address three issues. The standard of review regarding sovereign immunity, whether pre- and post-judgment interest is awarded in ADEA cases as a matter of law. This involves the statutory interpretation of the Age Discrimination and Employment Act, the Civil Service Reform Act, and the Back Pay Act of 1987. The third is the equitable reasons for reversal. Do no ones say that they need to be reversed? Can I ask a question first? Yes. We remanded this case for the sole purpose of allowing the district court to reconsider whether the judgment should be amended to correct the apparent clerical error. It was pretty clear, I mean, for the sole purpose, right? Then you get back to the district court, and I gather this interest order was already in the judgment when it came to us. That's correct. The judge reissued the order, backdating it in accordance with Ninth Circuit. No. But originally, originally, when it came to the Ninth Circuit the first time, there was interest in the judgment. That's correct. And you directed Judge Wilkin to correct the $1,000 clerical error. And nothing else. And nothing else. And then the government comes in and files a 60 v. 4 order saying that the judgment was void. Is there any precedent for that that you know of? Five years? I don't think the – I think they waived the issue back in 2004 when the judgment was first interest. Now, you didn't argue that in your briefs, though, but I was fairly mystified by it. I should have argued that in my briefs, and I do raise that now, that the issue was waived when it was not raised before the district court. Well, more than waived, it was also covered by our law of mandate, because we were very specific about the limited nature of what was going back to the district court. Right. And that order issued it in 2008, and it should have just been a correction of the clerical error and nothing more. Okay. Go on, sir. Okay. Is it – do you think that the government was without authority or the district court was, if it was a question of sovereign immunity, is that something that can be waived? Well, that is a good question. At what point can the government come back and raise sovereign immunity? This is a case where judgment was issued in 2004. There were cross appeals mostly concerning the other plaintiffs and the thousand-dollar clerical error. It's our position that the issue at this point, assuming that it wasn't waived by the government by not raising it and that the Ninth Circuit has never had a case in which they remand for a correction and an appeal arises out of a motion under Rule 60. I don't know of any precedent. But assuming that the Court has jurisdiction, the review here is a de novo standard of review. May I go back to the jurisdiction question for just a second? Isn't the issue of sovereign immunity, unlike most other issues that can be waived, isn't it essentially a counterpart of the question of subject matter jurisdiction, which can be raised at any point, I think, in a proceeding in the Federal Court? Well, I know that line of cases. And in abundance of caution, I took that view in briefing this as a case in which the Court has jurisdiction over and can look at the question of sovereign immunity. And my argument here is aimed at establishing that the government waived sovereign immunity in 1987 under the Back Pay Act. When the Back Pay Act went into effect, it affected all cases that are brought through the appeals procedure. I'm going a bit astray from the specific question here. The specific question is, after the case is litigated, it goes up on appeal, and suppose it hadn't been. Suppose we had just affirmed, instead of sending it back to this picky little point, could the government then have gone in after our decision and said, we forgot, go to the district court, said there is no jurisdiction over interest. We haven't waived sovereign immunity at that point. And if not, could it go back, simply because we gave what Burzum described, a limited remand on a different question? When can the government raise sovereign immunity? After we've affirmed an opinion, a decision. I think this is at the outer limits of the government's ability to raise sovereign immunity. And so I don't know if there's no bright line. Outside or inside the outer limits. Pardon me? Inside or outside the outer limits. I didn't brief this, but I believe it might be outside of the outer limits, given the fact that the court directed the district court to deal solely with the $1,000 clerical error. But just because why don't we let you get to your argument you wanted to make. Well, my time is out, so I'll have to save it for you. No, no, we'll give you another 5 minutes to talk about what you came to talk about. Okay. Thank you. And we'll worry about the other issue. When the Age Discrimination in Employment Act was amended in 1978 to add Federal employees, it was based on Title VII and not based on the Fair Labor Standards Act. So there's a historical distinction between cases arising under the Fair Labor Standards Act and the ADEA. The Back Pay Act was an amendment that was put into place at the same time as the Civil Service Reform Act was passed in 1978. And that set up the Merit Systems Protection Board as the new civil service commission for hearing appeals in cases like this. This was a reduction in force in which 550 top scientists were removed from their positions, fired, in essence, not due to any problems on their part, but due to a government decision. We maintain that the government is in error when they say that the Back Pay Act only applies to appeals and administrative determinations of unjust or unwarranted personnel action, because that's exactly what happened here. This was an age case in which Judge Wilkin found that the Department of Interior, USGS, had issued an unwarranted personnel action in violation of the Age Discrimination in Employment Act. We went through an appeal at the Merit Systems Protection Board. So this case arises in the district court out of the de novo jurisdiction provided in 5 U.S. Code 7703. Based on the court's de novo jurisdiction, when an award is issued for back pay, that triggers the Back Pay Act. The Back Pay Act defines what back pay is. It includes attorneys' fees, costs, and interest, both pre-judgment and post-judgment interest. Now, one of the plaintiffs that was originally in the RIPP case before the Merit Systems Protection Board, Joel Berquist, took his case separately to the Federal Circuit. The Federal Circuit remanded the case to the Merit Systems Protection Board, and significantly, the Merit Systems Protection Board found that the government Department of Interior, USGS, conceded the interest issue. In 2005, and that opinion is cited for you, but in case you haven't looked at it, I know I've got it here someplace, it is significant that the court says the agency has not disputed that appellant is covered by the Back Pay Act. This is 99 MSPR 516. Now, in our briefs, we raise the fact that the ADEA for Federal employees is modeled on Title VII. This is significant for a number of reasons, but most recently, the Supreme Court has issued an Age Discrimination Employment Act, which was recently cited by the Ninth Circuit, Carver v. Holder. In that case, which was issued in May 2001. Kagan. Kagan. The arguments about why the Back Pay Act doesn't apply would, apparent – I don't see what argument there would be for distinguishing Title VII and the ADEA. What argument is made in that regard? I thought the argument is simply that neither of them is mentioned, but if it applied to Title – and I know that there's an amendment to Title VII, but what argument would there be about why the two would be different? Well, what's significant about that is if it – there is a line of cases under the Fair Labor Standards Act that says that the Back Pay Act does not apply to Fair Labor Standards Act cases. And so the genesis of the – But those aren't discharge cases. That's correct. And when you have a removal or a RIF, the plaintiff is clearly within the language of the Back Pay Act, which involves back pay for a determination of unjustified or unwarranted personnel action. And I just would like to close and say that the policy here is to compensate employees for delay who have been awarded back pay for a determination of unjustified or unwarranted personnel action. But the purpose is to discourage the unlawful practices. And this is a case in which unlawful practices are found by the district court, affirmed by the court of appeals and the prior panel in this case, and there is no basis for asserting that the Back Pay Act does not apply to this case. May I – if I may interpose one question, this lawsuit is an ADEA suit, is it not? Yes, it is. And we're in a posture where Congress expressly amended Title VII to provide for interest, but did nothing parallel for the ADEA. Aren't we supposed to draw a distinction? That's a very good point. There aren't cases that say that the Title VII amendments of 1991 apply to the ADEA, and there has been over the years legislation pending to correct that because that's got a number of significant issues, including the right to jury trial and compensatory damages. However, in this case, Federal employees are in a very different posture from the private sector because the Back Pay Act is what governs how back pay is computed by the Federal government. Well, wasn't the problem in my understanding of the Title VII amendment is that it was to overrule Shaw, and that Shaw was a case in which the Back Pay Act didn't apply for the reason that you stated, i.e., it wasn't a termination case. Correct. And this is a case where the people lost their jobs, so they apply directly to the Back Pay Act. The Back Pay Act, however, overlaps somewhat the interest provisions in the 1991 amendments. But that doesn't really answer Judge Pollack's question, which is what do you make of the fact that in Title VII they added a specific provision to provide interest and they didn't do it in the ADEA? I mean, that's the question that can be answered whether it's positively or not, but it's not a general question. It's a very specific one. Why did they? And I mean, one of the answers would be the objective. Judge Berzin mentioned maybe that the purpose of that act was to overrule a lot of offensive Supreme Court decisions, and they were concerned about what would happen with Title VII, and were trying to remedy that, whether to protect the D.C. court opinion or to avoid an unfavorable Supreme Court decision or to remedy an unfavorable Supreme Court decision. Well, I think the class actions in Bernardi v. Uter and Library of Congress v. Shaw, to the extent that they primarily involve back pay over promotions, would not be entitled to interest, and unless the 1991 amendments, so it's a patchwork approach. The question is, why did they amend Title VII specifically to provide interest and not the ADEA? They also amended the Rehab Act and the ADA. No, not the ADA. The Americans with Disabilities Act. But they left off the ADEA as an oversight, and there's been congressional hearings on correcting this oversight, but it was not a deliberate distinction to be made to the disadvantage of people who are plaintiffs under the ADEA, the Age Discrimination Employment Act. So what do you do about an oversight? Do we correct it or wait for Congress to correct it? Well, Congress did correct it when they passed the Back Pay Act. They specifically authorized, and the government waived sovereign immunity over interest payments on back pay to Federal employees. But I gather, though, your larger point is that the oversight doesn't apply to this case. That's correct. In other words, there's an over – if you had a case that was about a promotion or about unequal pay or something like that, you'd have a problem. That's correct. Because the Back Pay Act, under Shaw, presumably wouldn't apply. And if it didn't apply, then the fact that it wasn't overruled would be a problem. Well, I don't know exactly all of the issues that were raised in the Carter v. Holder Ninth Circuit decision that came out on May 27th, 2010. But to the extent – that case alluded to the fact that the plaintiff did get interest in his age discrimination case. And if that was a promotion case, that basically expanded the scope of the sovereign immunity waiver for interest payments. All right. Thank you, Lou. Thank you very much.  May it please the Court. Thank you, Mr. Chief Justice. I'm Steven Saltheel, appearing for the appellee, Secretary of the Interior. If I may first address the waiver, the government waiver issue that was raised. This is an issue of sovereign immunity, and only Congress can waive the United States' sovereign immunity. So you think that at any point, 10 years after a case is completed, if you conclude that there should have been a sovereign immunity claim that wasn't made, you can come wandering into a district court and say, file 60B-4 motion and say that you should upset the whole judgment? I think, Your Honor, if it's a question of sovereign immunity, that's true. And, in fact, Rule 60, Rule 60B-4, Rule 60B-1, 2, and 3 have a one-year limit. Well, that's true, but you – so that's true for any subject matter jurisdiction claim, presumably. If somebody decides after the final judgment that there wasn't diversity jurisdiction, they can come in and file a 60B-4 motion. I don't know, Your Honor. I don't know whether there are other types of subject matter jurisdiction which – Well, there – But sovereign immunity specifically can only be waived by Congress. And if – Well, subject matter jurisdiction can't be waived at all. So why isn't it true then whenever there's a subject matter jurisdiction problem, the judgment's just not worth the favor it's written on, if somebody comes in to challenge it after the fact? If the court was without jurisdiction, I think that may be true. Suppose the government had actually paid out the interest. Could then it retrieve it on the basis that the government was immune? And, oops, there was a mistake, but you can't waive sovereign immunity. I don't know, Your Honor. I think that may be the case. I've not run into a case like that. And that has to have a history. It's Federal – I mean, this may be worth some briefs, is really the question. But is Federal sovereign immunity – Eleventh Amendment so-called sovereign immunity, State sovereign immunity, is waivable. Is there a separate law – and I don't know the answer to this – with regard to State – Federal sovereign immunity such that even expressly you can't waive it in a lawsuit? The Department of Justice, any of the executive agencies, I think it's well-established, cannot waive. So what about exhaustion? Under the APA, for example, exhaustion is a jurisdictional question because it depends on the waiver of sovereign immunity. So if the government doesn't challenge exhaustion and they don't like the result of a case, they can come back within a year and say it should have been exhausted, even though we didn't say that. I'm sorry, Your Honor. In other words, it seems to me you're opening up an enormous can of worms because the whole Administrative Procedure Act, for example, is based on a waiver of sovereign immunity. So any post hoc determination that there was a violation of the APA can lead to the government coming back in and saying we're now going to upset the judgment because we don't like it. Or the whole Federal Tort Claims Act is based on waivers of sovereign immunity. It's just all over the place. And if you allow the ordinary litigation procedures not to govern, i.e., when you're finished, you're finished, then you have enormous instability. Well, Your Honor suggested maybe briefing on this. I don't know. I mean, I know from respect to the false – I'm sorry, the Federal Tort Claims Act, there are cases in which the government first raised the issue of discretionary function at the appellate level. Fine. But after the case is over? Well, this is what we have here. This is after the case is over. No. The case was remanded. Well, it is after the case is over because it was remanded specifically and solely for a specific purpose. Everything else was sort of up in the sky by then. It was over. Well, respectfully, Your Honor, it was remanded to the district court, who was just For the sole purpose of correcting a clerical error. And it was only at that point where a judgment was issued that was then ready for action. All right. Well, suppose it hadn't been remanded. Would you take the same position? I don't know, Your Honor. I can tell you. It's not in the record, but I can tell you as the attorney who handled the case below what happened. Okay? And this is, I think, my point, that only Congress can waive, say, sovereign immunity. The fact that a government attorney didn't see an issue somewhere along the case is not enough to waive sovereign immunity. This issue did not – I readily admit I did not see the issue, never thought about it. The – this case went up to this Court, as Your Honor's know. It went back to the district court on remand. The district court issued an amended judgment. That amended judgment was submitted to the Treasury for payment. It was only at that point that the Department of Treasury said, wait a minute, there's no waiver of sovereign immunity for the payment of interest on the ADEA. You say the Treasury Department said that? That's correct, Your Honor. I see. So, I mean, and the point is, my mistake or somebody's mistake cannot constitute a waiver of sovereign immunity. So your answer is, had it gone through without question our Court and our decision was final and the government was prepared to accept our decision, there was no cert petition filed and a timely amount of the case was over, that then you could have gone back and challenged the interest payment? I don't know how procedurally it would work, but I'm sure that we would be in the same position where we would have to go to some court and seek relief because Congress has not waived sovereign immunity for the payment of interest. So, respectfully, I think Your Honors are going to have to reach the issue on the merits in this case, which is whether there was a waiver for payment of interest on an ADEA-backed pay award. Let's assume that there was no waiver. I'm not at all sure that that's a reliable assumption, but let's assume that in the government's favor. I'm puzzled about this on the quote's merits. We have the Title VII amended so that it's clear interest is payable under Title VII. Is there any possible reason in the government's view for a different position to be taken about proceeding under the ADEA? Aren't we used to understanding that the jurisprudence there is almost congruent? There are very similar civil rights statutes, but the fact is Congress did amend Title VII to allow for interest and did not amend the ADEA. And what the cases under the so-called no-interest rule, which discussed the sovereign immunity, and that's the library of Congress against Shaw, what they discuss is that the waiver must be express and unequivocal, and it must be separate from the general waiver of sovereign immunity from suit. Kennedy, that's a recital of doctrine. I'm trying to get to the policy behind it. First of all, I want to say that I'm sorry, Your Honor. I have no policy, compelling policy argument to offer. The counsel referred to as an oversight. I don't think we are permitted to assume that Congress made an oversight. But the problem is, the briefs in Shaw, which I looked at, make clear that the reason the issue in that case arose was because it wasn't a termination case. In other words, the back they set up the whole problem as being that the Back Pay Act didn't apply because of the kind of case this is. And therefore, that case cannot be taken as any kind of a termination under the Back Pay Act. And there's then a perfectly good explanation for why there was an amendment of Title VII, even despite the Back Pay Act. It doesn't explain why Title VII and ADA were treated differently, and it might matter in another case, but in this case, there's nothing in Shaw or in the amendment to Title VII that suggests the Back Pay Act doesn't apply, unless you tell me otherwise. Why is there that indicates that the Back Pay Act doesn't apply? In this case, so the ADA? Well, is there anything in the Shaw amendment sequence that suggests the Back Pay Act doesn't apply? Is there anything in the Shaw? In other words, is there anything about the fact that Title VII was amended, which was done to overrule Shaw, that suggests that the Back Pay Act doesn't apply to this case? No, Your Honor. I think that the case is clear. No. We just forget all that. We just go to the statute. What does the Back Pay Act say? And is it a sufficient waiver? That's the only issue. Nothing about Title VII or Shaw or anything else. I believe that that is the issue in the case, and there are two circuit courts of appeal, two major main circuit courts of appeal decisions on this issue, not with respect to the ADA, but to the extent that the Court is going to look at Title VII as an analogy. There are two cases. One is the Brown v. Secretary of Army case, and the other is the Arneson v. Callahan case. Right. So now you want to tell us why Brown is wrong and Arneson is right. Go ahead. Well, Brown came first, and Arneson rejected the reasoning in Brown. And the reason why Arneson rejected the reasoning in Brown is because the Back Pay Act does not meet the requirements, the very strict requirements, of the so-called no-interest rule that is articulated in Library of Congress against Shaw and other decisions, because it does not expressly and unambiguously waive sovereign immunity for human beings. All right. Well, why not? The ADEA, because it has no mention of it. Okay. Why? Because it doesn't say the words ADEA. It doesn't say anything. It doesn't say any statute. So then it wouldn't apply to anything, if you read it that way. Right. Because the Back Pay Act was enacted in 1966. It wasn't until 1972 that Title VII was amended to allow for Federal employees to sue, and it wasn't until 1974, Your Honor, that the ADEA was amended. So it seems to assume that the Back Pay Act was going to apply to these kinds of cases. Why would Congress then have to amend Title VII and the ADEA? Well, we just – you just agree with me that they could have – they amended Title VII for a completely different reason, having nothing to do with the Back Pay Act. Having to do with the fact that the Back Pay Act doesn't cover certain things. I'm sorry, Your Honor. What I was agreeing to, I thought, was that, in fact, the Court has to look at the Back Pay Act itself to see whether there is a waiver of sovereign immunity. So the Back Pay Act says appropriate authority, and court sounds like an appropriate authority. It says an unjustified or unwarranted personnel action. It doesn't mention any statute. So if it had to mention a statute, it wouldn't apply to anything. So why doesn't it apply? It doesn't apply for the reasons that are stated in Arneson, because it doesn't expressly mention the age discrimination. Well, it doesn't expressly mention anything. That's true. So it applies to nothing? No, it applies to appeals and administrative determinations, which, within that terminology, means cases brought to the MSPB on appeal, appeals of personnel actions brought to the MSPB. At the time that's passed, did the MSPB exist? I think – I don't know, Your Honor. No. But before that, there was the Civil Service Commission, which fulfilled the same role. The 1991 – And other appeals to that commission as well, Your Honor. I'm sorry. The 1991 amendments to Title VII covered other issues as well, if my recollection is correct. Am I right in remembering that – or in surmising, I can't quite call it a recollection – that the Justice Department favored, supported amending Title VII? I don't know, Your Honor. The President signed it. I don't know. I don't know. I don't know. Sorry. Judge Reinhardt has pursued the question of is this an oversight, and if it's an oversight, who gets to correct it? And the position of the United States is, oversight, schmoversight. Nothing the United States can do about it. Only Congress, not a court. That's correct, Your Honor. The position of the United States is that only Congress – Why shouldn't a court do it? Why shouldn't a court do it? If the United States comes into this Court and has no policy reason at all for such a result, is that what one wants to urge a court to do? Well, Your Honor, the Supreme Court has specifically – in talking about the no-interest rule – has specifically said that it's not the Court's place to consider policy reasons, however compelling, in determining whether there's a waiver of sovereign immunity. And, in fact, the Court has said that in earlier cases, but they said it in the Library of Congress against Shaw. Well, it may not be the position of – the function of a court to consider policy reasons, but surely it's the function of the Attorney General and the Department of Justice to consider whether there's a policy involved. No? But I don't believe, Your Honor, that the Department of Justice, the Attorney General, or anyone in the executive branch has the discretion to do something that is contrary to sovereign immunity without the express consent of Congress. Let's see that I'm over my time. Thank you, Your Honor. I think you probably have about the four minutes you asked for. Thank you. I won't use the whole four minutes. I just wanted to point out a few things. The Civil Service Reform Act, which was passed in 1978 before the amendments that added interest in the Back Pay Act, but after the Back Pay Act was passed by Congress, is the operative statute. And the specific section to look at is 5 U.S. Code 7702, which defines what kinds of cases the Merit Systems Protection Board can hear and has jurisdiction over in terms of mixed cases or cases involving discrimination. And they lump together, and this is consistent with the legislative history of the Civil Service Reform Act, they lump together the gambit, Age Discrimination and Employment Act, Title VII of the Civil Rights Act, the, I believe, the Equal Pay Act, the Rehab Act, are all to be treated the same way. And the Back Pay Act consistently has been applied by determining that interest is part of back pay when it is awarded by any appropriate authority, including the district court. To suggest that the district courts don't have jurisdiction to apply correctly the Back Pay Act for Federal employees that are successful in achieving reinstatement with back pay is absurd. There's no statute, no statutory basis for saying that a Back Pay Act, the Back Pay Act does apply and interest should be awarded. Kagan, did this case go through the Merit Systems Protection Board? Yes. We had a 91-day hearing with the Merit Systems Protection Board. And then some people went to the Federal Circuit and some people came to district court, depending on whether it was a mixed determination or not? Is that right? Well, Joel Berquist got one of the selecting officials to recue to revisit the issue of whether he was qualified for the Elmira I position. I forget the position number. And so he separately brought his case to the district court. All right. And then did the government ever take the – has the government ever taken the position that the cases that went through the Federal Circuit don't have interest? No. In fact, in that case, they conceded that the – after litigating it for a number of years, the Federal Circuit reversed and remanded Mr. Berquist's case in 2000. And in 2005, they finally conceded that interest should be awarded in his case when it was remanded to the Merit Systems Protection Board. So this issue has been litigated. The government has conceded the interest applies in MSPB appeals, and specifically the MSPB appeal, which was the genesis of this case. If you were drafting the opinion of this Court reaching the result which you contend for, how would you draft it? Would you draft it in terms of saying that the Back Pay Act, the provisions of the Back Pay Act, comprehend the clear determination of Congress that Sauerberg's case is not  Would you say that sovereign immunity should be waived here with respect to interest? Could you find that in the text of the Back Pay Act, or would you write an opinion which said, oh, it's really the ADEA that covers this, even though there's no language there? If you could help the Court out to know how to write an opinion, that would be useful. I guess I would like to suggest that this distinguished panel has the power and authority to revisit the question of whether the ADEA should have been included in the 1991 amendments to the Civil Rights Act. I think the better course of valor would be to direct judgment against the Secretary for the Department of Interior, fees and costs, to correct the July 20, 2009, judgment to provide that the pre- and post-judgment interest back to September 30, 2004, should be awarded under the Back Pay Act. And that's because the Back Pay Act clearly provides that interest shall be computed, and the government, Department of Treasury, knows how to do it. They've done it in hundreds of cases that have come before them, both that involve the ADEA and involve other types of issues. This is not a case of first impression. This is a case of it is so common for the MSPB to award back pay that we don't have a lot of cases reaching the circuit court on this kind of sovereign immunity argument. Thank you very much. Thank you, counsel. The case just argued will be submitted.
judges: Pollak, Reinhardt, Berzon